Filed 2/19/16  P. v. Surrell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068481 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1201279) |
| CARL WAYNE SURRELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Mark A. Mandio, Judge.  Affirmed.

Charles R. Khoury Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Carl Wayne Surrell guilty of extortion, assault with a firearm, and being a felon in possession of a firearm.  On the extortion and assault with a firearm

counts, the jury also found true that Surrell personally used a firearm. The trial court sentenced him to a total term of eight years in prison. Surrell appeals, contending: (1) the trial court improperly granted the prosecution's motion to consolidate two cases arising from separate incidents; (2) insufficient evidence supported the extortion conviction; (3) the prosecutor committed misconduct by presenting evidence concerning the "Nazi Low Riders" gang and race; (4) the trial court erred by not providing the jury a unanimity instruction; (5) the trial court erred in failing to appoint substitute counsel to file a new trial motion; and (6) cumulative error requires reversal. We reject Surrell's arguments and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Truscott Incident*

Chris Truscott lived with his friend, Robert McNeley, in McNeley's apartment. Surrell managed the apartment for the owner, Nipa Sproat. In June 2013, McNeley kicked Truscott out of the apartment for not contributing money.

As Truscott was moving his belongings out of McNeley's apartment, Surrell approached Truscott and said he owed $266 for utilities. Truscott believed McNeley was responsible for paying the utilities and informed Surrell that he did not have the money at that time. Surrell suggested that Truscott leave his bike and microwave as security for the money. Truscott said those items belonged to his parents. Surrell appeared frustrated and told Truscott to trust that the items would be there when he returned. When Truscott reiterated that the items were not his to leave and stated that he did not trust Surrell to keep them safe, Surrell became agitated and said, "Are you calling me a liar?"

2

Surrell pulled out a revolver from his shorts and hit Truscott in the face with it, causing Truscott's cheek to bleed. Surrell put the gun back in his pocket and said "Nazi Low Rider stuff." Truscott tried to negotiate with Surrell. At some point, Truscott went back to McNeley's apartment to wash his hands and get toilet paper to blot his wound.

Truscott's mother was sitting in her car nearby with Truscott's younger brother and sister. Truscott went to his mother's car and told her that Surrell had "pistol-whipped" him. When Truscott explained the situation to his mother, she told Truscott to leave the property and said Truscott's siblings were in danger.

Truscott went back to Surrell and left the microwave and bike. Surrell wrote out a document stating that Truscott had 90 days to pay $266 at which point Truscott's property would be returned to him. Truscott negotiated the 90-day term because he did not know if he could pay earlier. Truscott had left his property with Surrell out of fear that he or his family would be harmed. After signing the document, Truscott and his family drove to a gas station and called 911.

Truscott's mother testified that she was in her car with her two young children and they were waiting for Truscott to move his belongings into the car. Truscott approached his mother with a gash on his face and told her that he "just got pistol-whipped." Truscott's mother was afraid for her two young children and told Truscott to just give Surrell the microwave and bike and to sign the paper agreeing to pay money.

*Defense*

McNeley testified that he did not want Truscott to stay at his apartment because Sproat wanted additional rent money if Truscott lived there. On the day Truscott was moving out, McNeley texted Surrell and told him to come verify that Truscott was moving. McNeley did not notice that Truscott had an injury on his face that day.

Sproat testified that she and Surrell had a dating relationship. She was aware that Surrell had taken items from Truscott for money Truscott owed. Sproat had never seen Surrell carry a firearm or seen one in his vehicle or residence.

B. *Lopez Incident*

In March 2012, Gus Lopez and his wife were moving out from a residence they rented from Sproat. Sproat had commenced eviction proceedings against them. Lopez found Surrell and another man, Jeffrey Minnis, in the home fixing a leak. Surrell and Lopez's wife engaged in an argument. When Lopez stepped between them, Surrell pulled out a gun and struck Lopez in the head with it.

*Defense*

Minnis testified that he did not see Surrell hit Lopez with a gun. A neighbor who lived next door to Lopez testified that Lopez had previously threatened to kill him, "dry-fir[ed]" a rifle to intimidate him, and had shot at his residence. Other witnesses testified that Lopez had moved out of the residence and caused extensive damages, including slicing and drilling holes in pipes and spray painting walls.

4

In connection with the Lopez incident, the District Attorney charged Surrell with multiple offenses, including assault with a firearm and being a felon in possession of a firearm. The jury deadlocked on those charges and the court declared a mistrial.

DISCUSSION

I. *Consolidation Motion*

A. Additional Background

The prosecution filed a complaint pertaining to the Lopez incident in May 2012. After multiple continuances, the Lopez case was set for trial commencing on August 1, 2013. (Undesignated date references are to the year 2013.)

In June, the prosecution filed a complaint pertaining to the Truscott incident and moved to consolidate that case with the Lopez case. Surrell opposed consolidation. In July, the court denied the consolidation motion without prejudice. The court reasoned that while consolidation was appropriate because the charges involved the same class of crimes, similar course of conduct, and cross-admissibility of evidence, defense counsel would not have adequate time to prepare for trial on the Truscott matter. The court noted that if the Lopez case was continued to a date close in time to the Truscott case, the prosecution could move to consolidate again and the court would revisit the issue.

In August, on the date set for the Lopez trial, the prosecution again moved to consolidate the cases. A different judge of the superior court heard the motion. Defense counsel argued the court could not revisit the motion because the only reason reserved for revisiting the motion was if the Lopez matter was not going to proceed to trial on the scheduled date. Defense counsel stated she was ready for trial in the Lopez matter. The

5

judge stated that he had spoken with the judge who originally denied consolidation and that judge also recalled the limited reason for revisiting consolidation. After a brief continuance and further briefing, the court consolidated the cases. The court reasoned that consolidation was appropriate because the offenses occurred fairly close in time, neither was more egregious than the other, the evidence was cross-admissible, and consolidation would promote judicial efficiency.

The trial court continued the Lopez case to September 5, the trial date set for the Truscott case. Based on a later defense motion and time waiver, the court continued the trial to September 18. Trial ultimately commenced on September 24.

B. Analysis

Surrell argues the trial court improperly granted the prosecution's motion to consolidate the Lopez and Truscott cases because the second judge who heard the consolidation motion did not have jurisdiction to reverse the prior judge's ruling. We reject this argument.

Penal Code section 954 authorizes a consolidation or joinder of charges made in two or more accusatory pleadings where the pleadings "charge two or more different offenses . . . of the same class of crimes or offenses, under separate counts . . . ." (Undesignated statutory references are to the Penal Code.) The law generally favors consolidation because it promotes efficiency. (*People v. Ochoa* (1998) 19 Cal.4th 353, 409.) " 'Joinder of related charges, whether in a single accusatory pleading or by consolidation of several accusatory pleadings, ordinarily avoids needless harassment of the defendant and the waste of public funds which may result if the same general facts

6

were to be tried in two or more separate trials [citation], and in several respects separate trials would result in the same factual issues being presented in both trials.' " (*Ibid*.)

The propriety of the court's ruling on the motion to consolidate is judged by the information available to the court at the time the motion is heard. (*People v. Ochoa*, *supra*, 19 Cal.4th at p. 409.) We review such a ruling for an abuse of discretion and, in so doing, must determine whether the ruling falls " 'outside the bounds of reason.' " (*Id*. at p. 408.) Even if the trial court errs in consolidating multiple charges, reversal is not required unless the defendant can show that it is reasonably probable the joinder affected the jury's verdicts. (*People v. Grant* (2003) 113 Cal.App.4th 579, 587-588.)

Here, Surrell argues the second judge who heard the consolidation motion exceeded his jurisdiction by overruling another judge's prior order denying consolidation. While we recognize the general rule that the power of one judge to vacate or correct an order made by another judge is limited (*In re Alberto* (2002) 102 Cal.App.4th 421, 426-427), the fact that one judge denies consolidation and a subsequent judge orders consolidation does not create a jurisdictional defect. (*People v. Locklar* (1978) 84 Cal.App.3d 224, 230.) A motion to consolidate may be renewed based on changed circumstances and a second order on the issue is valid until revoked. (*Ibid*.) Notably, the first judge in this case made her ruling *without prejudice* and specified that the court would reconsider the issue under changed circumstances.

Surrell contends the consolidation prejudiced him because the Lopez case was weaker than the Truscott case and the prosecutor inflamed the jury by eliciting evidence concerning the Nazi Low Riders. We reject Surrell's argument because this matter did

7

not involve consolidating a weaker case with a stronger one. Both cases involved similar facts and charges. Moreover, it is clear the Truscott case did not bolster the charges pertaining to the Lopez case because the jury did not reach a verdict on the Lopez charges. Further, at the time the court granted the consolidation motion, it had no reason to believe that one incident was more inflammatory than the other. Thus, Surrell has failed to meet his burden of showing prejudice to establish that the trial court abused its discretion in granting consolidation. (*People v. Mendoza* (2000) 24 Cal.4th 130, 160.)

## II. *Sufficiency of the Evidence*

Surrell argues insufficient evidence supported the extortion conviction because the evidence failed to show his wrongful use of force or fear. We disagree.

In reviewing the sufficiency of the evidence to support a conviction, we determine " 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' " (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13.) Under such standard, we review the facts adduced at trial in full and in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions. (*People v. Arcega* (1982) 32 Cal.3d 504, 518; *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 996.)

"Extortion is the obtaining of property from another, with his consent, . . . induced by a wrongful use of force or fear." (§ 518.) "Fear, such as will constitute extortion, may be induced by a threat of . . . [¶] an unlawful injury to the person or property of the individual threatened or a third person." (§ 519.)

Surrell contends the facts do not support extortion because Truscott agreed to leave his microwave and bike as collateral for unpaid rent, negotiated the agreement, and nothing established that Surrell pistol-whipped Truscott with the intent to force Truscott to give up property. However, Truscott testified that Surrell became agitated and pistol-whipped Truscott after Truscott refused to leave his property as security for unpaid rent. It was only thereafter that Truscott agreed to give Surrell his bike and microwave because Truscott was in fear. The fact Truscott negotiated aspects of the agreement pertaining to the return of his property does not diminish that Surrell induced Truscott's consent through wrongful use of force or fear. Based on the totality of the evidence, we conclude the evidence established force or fear.

### III. *Gang and Race Evidence*

A. Additional Background

At the preliminary hearing, Truscott testified that after Surrell hit him with a gun, Surrell threatened to get 10 Nazi Low Riders to beat Truscott up. Before trial, Surrell moved in limine to exclude any evidence that he was a gang member. The prosecutor claimed the evidence was relevant to establish Truscott's fear. The court concluded the prosecutor could question Truscott about Surrell's Nazi Low Rider statements so long as the prosecutor laid a foundation that Surrell's threat to get 10 Nazi Low Riders caused

9

part of Truscott's fear. The court excluded any evidence that Surrell had a swastika tattoo as too prejudicial. The court noted it would admonish the jury that the evidence was only relevant to the victim's state of mind.

During trial, Truscott testified regarding prior interactions with Surrell that made Truscott fear for his safety. During those prior interactions, Surrell claimed he was a member of the "Nazi Low Riders." The court informed the jury that it could consider the effect the statement had on Truscott but not for the truth of the matter asserted. Truscott went on to explain that Surrell made Nazi references at least once per week. Truscott understood the Nazi Low Riders was a gang and equated the term "Nazi" with "white supremacists," "the Nazi party," and the "German [a]rmy." Truscott described himself as Filipino, but stated he was sometimes confused with persons having Hispanic origin. Truscott described Surrell as white.

The prosecutor asked other witnesses about race. For example, McNeley testified that he was white and thought Truscott was Asian. The prosecutor also asked three defense witnesses relevant to the Lopez case about their race. Each testified they were Caucasian or white.

B. Analysis

Surrell argues the prosecutor committed misconduct by presenting evidence concerning the Nazi Low Rider gang and race without first laying the required foundation that Surrell said he would bring 10 Nazi Low Riders. We reject this argument.

In general, a claim of prosecutorial misconduct is waived where it has not been raised in the trial court.  (*People v. Price* (1991) 1 Cal.4th 324, 447; *People v. Rowland* (1992) 4 Cal.4th 238, 274.)  The only exception to this rule is where prompt admonition by the trial court would not have cured the error.  (*People v. Rowland*, *supra*, 4 Cal.4th at p. 274.)  Only where the record shows misconduct, and the issue is preserved for appeal because an objection would have been futile and an admonition would not have cured the harm, must an appellate court determine whether on the total record the harm resulted in a constitutional miscarriage of justice.  (*People v. Green* (1980) 27 Cal.3d 1, 33-34.)

Here, Surrell forfeited his claim of prosecutorial misconduct by failing to object on that basis below.  Even if he did not forfeit the claim it fails on the merits.  Under California law, a prosecutor who uses deceptive or reprehensible methods to persuade a jury has committed misconduct, even if such action does not render the trial fundamentally unfair.  (*People v. Frye* (1998) 18 Cal.4th 894, 969.)  "[A]lthough it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony [citation], merely eliciting evidence is not misconduct."  (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.)  "To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements."  (*People v. Frye*, at p. 970.)  Moreover, we presume that a jury will follow an admonition to

disregard improper evidence or comments; thus, it is rare when misconduct cannot be remedied by the court's admonitions. (*People v. Pitts* (1990) 223 Cal.App.3d 606, 692.)

In the case before us, the prosecutor did not commit misconduct by questioning Truscott about Surrell's Nazi Low Rider statements. The trial court ruled that the prosecutor could engage in that line of questioning if he laid the proper foundation that Surrell's threats to bring "10 Nazi Low Riders" caused part of Truscott's fear. At trial, Truscott did not specifically say that Surrell threatened to bring in "10 Nazi Low Riders." Instead, Truscott expressed concern for his safety because Surrell claimed to be a member of the Nazi Low Rider gang, which Truscott believed was a white supremacist gang. Truscott further stated that after Surrell hit him with the gun, Surrell said "Nazi Low Rider stuff."

Although the court referenced Truscott's preliminary hearing testimony regarding "10 Nazi Low Riders" when explaining the proper foundation, there is no meaningful difference between Truscott's preliminary hearing and trial testimony. In general, Truscott expressed fear based on Surrell's Nazi Low Riders comments. The evidence complained of established that Truscott left his belongings with Surrell due to fear. Thus, the prosecutor properly elicited the testimony. Moreover, the trial court admonished the jury that it could only consider the testimony for the impact it had on Truscott and not for the truth of whether Surrell was a gang member. We presume the jury understood and followed that admonition.

12

Surrell also contends the prosecutor committed misconduct by questioning witnesses about their race. Even if we assumed, without deciding, that the questions amounted to misconduct, it is not reasonably probable that without such misconduct, Surrell would have obtained a more favorable outcome. Regarding the Lopez incident, the prosecutor elicited testimony from three defense witnesses that each witness considered himself or herself white or Caucasian. The jury did not find Surrell guilty of any offenses concerning the Lopez incident.

On the Truscott matter, the prosecutor elicited testimony from McNeley that McNeley was white and Truscott was Asian. Defense counsel questioned Sproat, Surrell's girlfriend, about her race. She stated she was Southeast Asian. There is not a reasonable likelihood that the jury used the race evidence in an improper manner, especially where, as here, the testimony was brief, defense counsel elicited testimony from Sproat which somewhat contradicted Truscott's white supremacy testimony, and the court instructed the jury that it could only use the Nazi Low Rider evidence for its impact on Truscott and not for whether Surrell was a member of that gang or whether the gang even existed. Accordingly, we reject Surrell's claim of prosecutorial misconduct.

IV. *Unanimity Instruction*

Surrell argues the trial court erred by not providing the jury a unanimity instruction on the extortion charge because the jury could have found him guilty on multiple factual bases. Specifically, he contends some jurors could have found Truscott left his belongings out of fear due to Surrell's Nazi Low Rider comment, some jurors could have found extortion based on Truscott's mother's fear for her children, and some

13

jurors may have relied on evidence that Surrell forced Truscott to leave his belongings by striking him with a gun.  We reject Surrell's argument.

A defendant's constitutional right to a unanimous jury verdict requires that when the evidence shows more than one unlawful act that could support a single charged offense, the prosecution must either elect which act to rely upon or the trial court must sua sponte give a unanimity instruction telling the jurors they must unanimously agree which act constituted the crime.  (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.)  The unanimity instruction is designed to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agreed the defendant committed.  (*Ibid*.)  No unanimity instruction is required, however, when the offense involves a continuous course of conduct; i.e., when the acts are "substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place."  (*People v. Champion* (1995) 9 Cal.4th 879, 932, internal quotations omitted.)  The continuous conduct rule also applies when a defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for jurors to distinguish between them.  (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100.)

Here, the trial court did not err in refusing to give a unanimity instruction on the extortion charge because the evidence showed a continuous course of conduct that constituted a single transaction.  Surrell demanded that Truscott leave his belongings as security for unpaid rent.  When Truscott refused to do so, Surrell became angry.  Surrell then pistol-whipped Truscott and made a comment about the Nazi Low Riders.  Truscott consulted with his mother, who became afraid for her other children.  Thereafter, Truscott

14

agreed to leave his belongings and sign a document promising to pay the alleged amount owed within 90 days. There was no basis to distinguish between Surrell's act of pistol-whipping Truscott and Surrell's comment about Nazi Low Riders because they occurred as part of one transaction. Similarly, Truscott's conversation with his mother was part of the same course of events. Moreover, Surrell had the same defense throughout that Truscott voluntarily signed the document and fabricated the story about being pistol-whipped.

Surrell's claim that Truscott's mother's fear may have resulted in the extortion conviction lacks merit. Fear for purposes of extortion "may be induced by a threat . . . [¶] [t]o do an unlawful injury to the person or property of the individual threatened or a third person." (§ 519) "When . . . making the threat . . . , the defendant [must have] intended to use that . . . fear . . . to obtain the other person's consent to give the defendant money [or property.]." (CALCRIM No. 1830.) Here, the evidence established that Surrell threatened Truscott by hitting him with a gun and referencing the Nazi Low Riders. There was no evidence that Surrell threatened Truscott's mother or intended to use her fear to extort money or property from Truscott. Accordingly, it is not reasonably probable that Truscott's mother's fear formed the basis of the extortion conviction.

Based on the foregoing, the court was not required to give a unanimity instruction.

V. *Substitute Counsel*

A. Additional Background

At Surrell's sentencing hearing, the court commented that it had overheard Surrell and defense counsel "talking loudly." The court permitted Surrell to put his issues on the

15

record and inquired with counsel as to the code section that applied to new trial motions. The court asked Surrell whether he had asked defense counsel to make a new trial motion. Surrell responded that he believed a new trial motion was a matter of common practice. After the court informed Surrell that new trial motions were not common, defense counsel stated she did not believe a basis existed for a new trial motion and would not bring one.

The court asked Surrell to state his reasons for why he believed he should have a new trial. Surrell's complaints included prosecutorial misconduct for referring to him as a Nazi Low Rider, for stating he and Sproat were slumlords, for suggesting he was prejudiced against non-white persons, and for magnifying the photograph of Truscott's wound. Surrell also claimed the evidence did not support the gun charges because there was no evidence of a gun or gun paraphernalia. Lastly, Surrell complained that he received ineffective assistance from counsel. Before Surrell could go into the details about his communications with his attorney, the court interrupted to prevent disclosure of privileged information and informed Surrell he could request a new attorney through a motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

The court inquired as to whether Surrell wanted it to appoint a new attorney. Surrell responded, "No, I'm just trying to get it on the record so I can preserve for appeal. That's what I'm trying to do, and try to get sentenced today and get out of here." The court then confirmed that Surrell was complaining about his counsel's pretrial preparation and cleared the courtroom except for Surrell and his counsel.

16

In a closed hearing, Surrell stated he was claiming ineffective assistance of counsel because: (1) he did not meet with counsel until after the parties picked a jury; (2) counsel did not introduce his medical records, which would have shown he had shoulder surgery and therefore could not have swung his arm at Truscott; (3) counsel never provided him with a copy of the "prosecution discovery"; (4) Surrell provided counsel with the name of an eyewitness, but counsel did not call that person to testify; (5) counsel failed to poll the jury after the verdict; (6) counsel was unaware of certain facts pertaining to the Lopez matter; and (7) there were problems with Surrell's arraignment.

The court had no concern about Surrell's allegations regarding the Lopez matter because those charges were dismissed. Defense counsel explained that she met with Surrell when the Truscott case was filed and relayed Surrell's potential exposure was "in the 20-year range." Although the prosecution initially offered 10 years, Surrell did not want to plead guilty to anything. Defense counsel further stated that she and a defense investigator met with Surrell shortly before trial because the prosecutor had offered a section 245 strike with a four-year term that would allow for half-time credit, but Surrell refused the offer.

In regard to the eyewitness information that Surrell had provided, defense counsel explained that at first Surrell initially stated the witness's name was "Polar Bear" and he "live[d] in the trees," which made it difficult for the defense investigator to locate that person. Surrell later provided the name "Michael Cayse," but no contact information. The investigator could not locate Cayse and Surrell would not waive time to locate him.

On the issues of prosecutorial misconduct and ineffective assistance related to evidence at trial, defense counsel explained that the court had previously considered those issues, she understood the rationale behind the court's rulings, and abided by the court's rulings.

The court stated that if Surrell was pursuing a *Marsden* motion, the court would deny it because there were insufficient grounds to grant it. The court further stated that defense counsel "did a very good job in this trial" and obtained favorable results pertaining to the Lopez incident. The court went on to note that it had allowed in evidence of the Nazi Low Riders for the purpose of its effect on Truscott, but the prosecutor's attempt to paint Surrell's motive as prejudice was ineffective because Surrell's girlfriend was Asian. Additionally, the jury saw that Lopez was a "complete asshole" and charges related to him were dismissed. The court explained to Surrell that the jury gets to make decisions such as whether there was a gun and there was evidence to support the presence of a gun.

B. Analysis

Surrell argues the trial court erred in failing to appoint substitute counsel to file a new trial motion "based on the Nazi grounds and ineffective assistance of his trial counsel." We disagree.

"Where a defendant requests the substitution of new counsel after trial in order to assist in the preparation of a motion for new trial based on the inadequacy of trial counsel, we believe it imperative that, as a preliminary matter, the trial judge elicit from the defendant, in open court or, when appropriate, at an in camera hearing, the reasons he

18

believes he was inadequately represented at trial. As stated in *Marsden*, a trial court cannot thoughtfully exercise its discretion in a matter such as this without listening to the defendant's reasons for requesting a change of attorneys. . . . Once a trial judge is informed of the facts underlying a defendant's claim of inadequate assistance, he is then in a position to intelligently determine whether he may at that point fairly rule on the defendant's motion for a new trial, or whether new counsel should be appointed to more fully develop the claim of inadequate representation." (*People v. Stewart* (1985) 171 Cal.App.3d 388, 395-396 (*Stewart*).)

"In those instances where the alleged incompetence relates to events occurring at trial—such as, to name just a few examples, a failure to object to evidence, weakness in legal argument, or a failure to vigorously cross-examine a witness—the trial court is uniquely equipped to determine whether the defendant's claim has merit. . . . Indeed, in such circumstances the trial judge is in a far better position to evaluate the defendant's claim than would be new counsel, who, unlike the judge, was not present at trial. [¶] If, on the other hand, the defendant's claim of inadequate representation relates to something that did not occur within 'the four corners of the courtroom' [citation] or which cannot fairly be evaluated by what did occur at trial, then, in the sound exercise of its discretion, the court may appoint new counsel to better develop and explain the defendant's assertion of inadequate representation." (*Stewart*, *supra*, 171 Cal.App.3d at p. 396.)

"We stress . . . that new counsel should not be appointed without a proper showing. A series of attorneys presenting groundless claims of incompetence at public expense, often causing delays to allow substitute counsel to become acquainted with the

19

case, benefits no one. The court should deny a request for new counsel at any stage unless it is satisfied that the defendant has made the required showing. This lies within the exercise of the trial court's discretion, which will not be overturned on appeal absent a clear abuse of that discretion." (*People v. Smith* (1993) 6 Cal.4th 684, 696 (*Smith*).)

Here, Surrell contends the trial court was required to appoint new counsel to investigate and bring a new trial motion. He further asserts that the trial court and prosecutor improperly turned his "new trial motion into an easily denied *Marsden* motion." This argument fails as the first step required for Surrell's new trial motion was appointment of new counsel. Although Surrell did not directly state he sought new counsel, he in effect did so by raising ineffective assistance and stating he wanted to move for a new trial. (*People v. Reed* (2010) 183 Cal.App.4th 1137, 1145 [defendant's "expressed desire to pursue a motion for new trial based on counsel's incompetence" and defense counsel's refusal to pursue that motion amounted to a *Marsden* motion].) Even on appeal, Surrell argues the trial court should have appointed substitute counsel. When the defendant indicates he wants a substitute attorney, the court is required to conduct a *Marsden* hearing. (*People v. Sanchez* (2011) 53 Cal.4th 80, 90.)

The court in this case properly conducted a *Marsden* inquiry by allowing Surrell to explain the reasons for his dissatisfaction with his current counsel and considering defense counsel's response to each point. Many of Surrell's arguments pertained to events that occurred within the four corners of the courtroom, including those related to the introduction and admission of Nazi Low Rider and other evidence, alleged problems with the arraignment, jury polling, and counsel's preparedness for trial. The trial court

20

was well equipped and in the best position to determine if those claims had merit. Further, to the extent Surrell disagreed with his counsel's tactical decisions, disagreements as to tactics are inefficient to establish ineffective assistance. (See *People v. Welch* (1999) 20 Cal.4th 701, 728-729.) On those matters where defense counsel provided explanations that contradicted Surrell's allegations, the trial court was entitled to credit defense counsel's statements over Surrell's statements. (*Smith*, *supra*, 6 Cal.4th at p. 696.)

Based on the record before us, we conclude the trial court properly conducted a *Marsden* inquiry and acted within its discretion by declining to appoint substitute counsel for the purpose of filing a new trial motion.

## VI. *Cumulative Error*

A series of errors, though harmless when considered independently, may in some circumstance rise to the level of prejudicial reversible error. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' " (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)

Here, Surrell asserts the cumulative effect of the alleged errors raised on appeal resulted in a denial of his right to a fair trial. We concluded there was no error. For the same reasons, we conclude there is no reasonable possibility that the cumulative effect of the alleged errors affected the jury's verdict. Consequently, the accumulation of the claimed errors did not deprive Surrell of a fair trial.

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McDONALD, J.